I'm here to present the California Artist of the Year piece of art, Richard Grant. We're representing the New York Philharmonic Orchestra, the Kansas Philharmonic, and the New York Philharmonic Orchestra. And we have the artists of Robert Hilt, Marish, and Synthra, who are going to be singing a lot of the New York Philharmonic Orchestra. And of course, Angel is going to be singing a lot of the New York Philharmonic Orchestra. Angel, can you keep your voice up? Yes. So, I would like to reserve a few minutes for the violinist. It's time to get back on to the outtake panel. We're going to be taking a look at what comes into play. Thank you. We've got our seat in reviewing these manners for a moral argument. I believe there's really only one issue with these piece of art today, and that is the question of product identification, and whether the asbestos that was contained in the frustrator waters, or connected to the frustrator waters, in one of the states which Mr. Hilt was exposed, was an original movement for the frustrator, or desirable movement for the infirmitary. The reason I state that up front is because that is the basis, and I hope everyone will agree with that, of the original motion for summary judgment. And if I do it correctly, to the original motion, which is in the absolute record of H.574, and so there are only two bases on which the motion was brought. One, is there any proof, or there seems to be a less known proof that the asbestos in selection to which Mr. Hilt was exposed was original, and provided by a frustrator. So it's all dependent on, is he or I the expert? It's not a trial. It's all dependent on the weight of Mr. I's testimony that seemed to be, in other words, if the district court was correct in saying that Mr. I's testimony was either not admissible, or have no weight, this is unclear exactly what the basis was in the court's ruling, but then the court, if he was correct on that point, that he was correct in saying there wasn't a genuine issue of material fact on the nature of the insulation. Is that correct? That's correct, and it rests. In order to, I think it's pretty clear that there was asbestos insulation originally, and thereafter, in these boilers, because that was what was required when you deal with high-temperature insulation in high-temperature boilers. The question is, of course, is phosphor oil reliable? I'm going to ask you to get into the bare-methods answer, and you'll get me by Judge Brayhoff. So there was evidence that the boilers themselves were manufactured by phosphor peeler, so that's not being argued, correct? Correct. And there's evidence that he was exposed, that Mr. Hill was exposed to asbestos dust from these boilers over a fair length of time. I think it was two to three months on the Bradley, and three to six months on the Constellation. And so the substantial exposure issue is not being argued. It would only be argued, as this Court feels it should be argued, that it was not in their motion, and it ends up in some of the papers before this Court. But when you look at the original motion, it's not there at all. Actually, when you look at Judge Brayhoff's opinion, it's basically not exactly what you see, just as there's no doubt. And that is, whether that insulation, or whether Charlie I's declaration is sufficient to establish the original insulation. The District Court said it was not. What was wrong with that determination? What was wrong is the District Court, first of all, found that Mr. Hill was exposed to asbestos. But then he says, however, more importantly, there's no evidence that the asbestos to which Mr. Hill was exposed was original to these boilers, and that Mr. I's declaration, since he wasn't personally there in any personal knowledge, it was speculation. And that's the gist of the opinion here. What could be wrong with that? Well, it's not speculation. And I was in front of Judge Brayhoff many times, and we had this disagreement. There's a difference between expert opinion and, obviously, speculation. Expert opinion is general opinion in scopes. Well, three is it's permitted and used in most cases. Speculation actually is defined by the dictionary of Webster's as ideas or guesses about something that is not known, whereas an expert opinion is belief or judgment about something given by an expert on a subject based upon data and information provided to him or her, along with their own personal knowledge and experience. General speculation is something about what may happen in the future. You guys already can think about what could happen in the past, too. But speculation is mostly because you don't know all the facts of what's going to happen in the future, so I may speculate. We hope that the Warriors win today, but I don't know that there's any facts in which I can base that. But for a past event, that's exactly what we use the experts for. We present them with data. We present them with facts, and we ask them, based upon their knowledge, experience, we can reveal the facts that actually happened. In this case, Mr. Hill was anonymous for Bradlee right after he was commissioned, and he's on the Constellation. I wanted to go all the way back to there. Maybe it's a question for a proposing counsel, but I'll ask you, too. Is there really any issue as to whether he was exposed early on the Bradlee, early in his career? Because it seems like you have to kind of put together facts from different places to come up with that, because Mr. Hill himself didn't place himself on any ship in any given year. And so, as I understand it, you're saying, well, he said he was working in this particular job. We know from other evidence he only worked in that job for a year. Therefore, he must have been working in that job on the Bradlee, which was the clean-up dusty job. But is that undisputed, that he was exposed on the Bradlee in approximately 1966, the first year that he was employed? I don't think it's disputed, Judge. We're bringing it up because I think it was disputed. You're right. You do have to connect certain dots. And some of the evidence was provided by the defendant on the interrogatory responses. So you have to connect the dots. He was a laborer both on the Bradlee and the transportation in 1965. And in his deposition, he testified that when he was a laborer, that's when he was working either within two or three feet of the boilermakers or working himself, on some of the refinery equipment. These are the swimming above the dust. And then he went on to say that, given that he was servicing the Constellation, the air was so thin with us, it was like smoke, and the air was very dusty on the Bradlee. So, yes, in order to- On the Constellation, I didn't think that we had an opinion that the insulation, the asbestos-containing boiler material was original. I thought that Dr. Byer was only speaking about the Bradlee. No, he was speaking about both. But he used words virtually impossible. That he wasn't exposed to original asbestos, basically, on the Bradlee. But the Bradlee, what's it is? What's the name of it? It was lodged in 64, initially in 65. It wasn't even deployed in 66, and Mr. Hill worked on it in 65. So, that's the clear evidence. You have to extrapolate a little bit further. On the Constellation, because there, the Constellation was commissioned, I think, in 1961. And during that four-year period, that's what you'll be seeing here, Mr. Wright did testify, or did declare, that in his experience, this insulation would remain on the ships for decades. But certainly, so it would be more likely than not, and certainly if you take the evidence that I was favorable to the plaintiff, and use all the inferences, the inferences are certainly that both ships, the plaintiff was exposed to original insulation because most of it, especially that it's kind of straight on the Bradlee, because that's what we're going to need for your bill, is it would have been almost impossible if you weren't here for the most, even if the most of your factory equipment, materials, and insulation were original. It's almost impossible for you just to be working there. If it's all over, if the original material is all over the boiler, it would be almost impossible for the workers just to be picking out specific spots, which just, coincidentally, happen to be replacement parts. So the question was whether the Foster Wheeler insulation included asbestos-containing materials, because the only thing I saw on the record, maybe you can point me to something else, is there was testimony that Foster Wheeler boilers had insulation that possibly, in some cases, could have had asbestos-containing materials. Was there anything more than that that would identify if the insulation was original to the boilers you would have as waste, as I said? Yes. From your personal knowledge, Mr. Ives' declaration, all high-temperature thermal insulation in our factory, materials would have contained asbestos on a particular unit, including 1974. I don't think you need to judge my brain on that problem, but I don't even think you have evidence of really having a problem with that. Well, this was raised upon the fact that it wasn't original equipment. I believe what governments have to do is to just skip to my other points, that bare metal defense is an initiative. We agree. That's the law. If it's not original, we don't prevail. The admissibility of Charlie Ives' declaration is not before the court. We necessarily agree to admit it. He just thought it was fascinating. I mean, there's no prosecution with regard to the asbestos issue either. If the court would like me to address the situation I'd like to thank everybody who's already here. Thank you. Do you have any other questions? Okay. We'll see if there's time for questions. Good morning. My name is Hugo. I'm Hugo Carver IV, and then it's Philly Foster Wheeler. I'd like to start by quoting the late, great philosopher Peter Yogi Berra. It's like deja vu all over again. I mention that because the last time I had the honor of speaking to the Ninth Circuit was on August the 31st of 2015 against Mr. Grant in Pasadena in the McIntosh case, which is incredibly factually similar and wholly binding and controllable in this case. The first point I'd like to make is I disagree with Plata's counsel that there is one issue before this court, and it's only product identification, and that Judge Robredo's order indicates that it's only product identification. When we look at Judge Robredo's order, it says conclusion, and then he says the grounds, G-R-O-U-N-D-S. That is plural. It's not singular. In which summary judgment is granted is insufficient evidence of product identification slash causation. Those are two different essential elements that judges must prove. Pursuant to Lindstrom v. Hastie product liability trust in a maritime case, we look first to evidence of product identification, which in this context is exposure to asbestos-containing products originally supplied or manufactured by the defendant, and then second to causation, which is substantial factor. In this case, Plata's evidence must be accepted as both relevant and reliable on the evidence presented by one Mr. I. So on what basis would you mean that they're not reliant on the expert eyes? It was considered, and it was projected. Was it discredited, or did he find it inadmissible? He found it unreliable. Well, why is this the same thing as saying it was discredited? Because you weighed it, didn't you? Absolutely. How do you weigh it? How do you weigh an answer by a declaration on summary judgment? Explain it, and what's the basis, what's the legal basis for saying that it's not reliable, or it's not entitled to much weight because he didn't have first-hand knowledge? It's important to note. We got it both. All right, okay. It's important to note that when you look at Dr. Braeburn's declaration and Mr. I.'s declaration, there were multiple motions for summary judgment filed by multiple defendants. It involved multiple ships. Mr. I. had personal knowledge regarding the Midway. He was on the Midway. He saw the installation when he was working on it, and he had personal knowledge of the installation, whether it was original or not, to the ship. In this case, with regard to the two ships at issue for Foster Wheeler, I don't mean to cut you off, Your Honor, but he had no knowledge. And what Judge Rapredo points out, and I'll forward him here, but Mr. I. does not have any personal knowledge of the ships or the boilers or the installation, so it's not an easy issue. I am going to cut you off now, but how much expertise does it take to say it's more likely than not that if the ship is only one year old, the installation is probably supplied as original equipment. And I think it is admitted that Foster Wheeler supplied the original insulating material when they delivered the boiler. Correct. So the expertise, we looked at the foundation of the expert's opinion, and that's exactly what Judge Rapredo did. Is there any first-hand knowledge from anybody, whether it's a secondary witness or Mr. I., that the insulation that the deceit in this case was exposed to was original to the ship? Why do we need first-hand knowledge? Why can't someone say, based on my extensive training and experience and observation on other ships, within one year of the ship being commissioned, the insulation that's in the boiler is original to the installation? Because the district court, Your Honor, as you know, is the gatekeeper of evidence under 702. Is this evidence? I mean, personal knowledge is not required for expert opinions. So the district court would have heard if that was the basis for the district's crediting mistrust affidavit. The district court did not care. Personal knowledge is not necessarily required. If it is, the expert can review and rely on other evidence and come to a conclusion. The problem in this case is there is no other evidence. There is no first-hand evidence. Well, it's just as Judge Moulton was indicating. We know when the boiler was installed, when the ship was commissioned, we know the boiler was installed, and we know that the information was working there the first year. I don't think you need an expert. It's a reasonable inference for the jury that the insulation was original. Not without any evidence whatsoever. Well, there is the evidence, the evidence of timing. What's wrong with that evidence? We know the boiler was delivered. That was Foster, and that was manufactured by Foster. We would argue against it. Judge Moulton pointed out it wasn't disputed that the boiler came with insulation. So it would be an unreasonable inference to say that in the first year of operation they removed the entire insulation that was there and installed some replacement insulation. There's no basis for that sort of inference, is there? And there's no basis for the inference that the insulation that was originally installed stayed with that boiler for 1 year, 2 years, 5 years, or any other point in time. The distinction in this case, there's a difference between Mack and Doe, is Mack and Doe had a witness, Mr. Sappington, who remarkably remembered 50 years before that the insulation on the ship was original. Here we have no such testimony from anybody. But why do we need it? I mean, doesn't it just defy logic to think that within the first year of the commissioning of the ship they pulled out all the insulation that was originally supplied with the boiler, installed new insulation, and then within 12 months of its commissioning Mr. Milk got on the ship and they were pulling it out again? No, because it's not even unreasonable to believe that the originally installed boiler remained on the ship for a year. Well, we'll assume we don't agree with you on that. Does that mean you lose or is there another basis for you to say that it's not a genuine issue of material fact? Fortunately, I don't lose. But we get to the second level here, which is substantial factor. In the Mack and Doe case, which is a dead point, where the actual declarence for medical causation, substantial factor, was Dr. Raymond, we see the exact same declaration saying that the exposure above ambient work background is a substantial factor. But there's a lot more evidence here, right? There is evidence of him working both in the boiler room and with respect to all the dust, right? Adjacent to it and dealing with it, doesn't the evidence seem much more substantial here in regards to his exposure to asbestos dust or asbestos-making material dust than it may have been? It is, with all due respect, not. In what the Mack and Doe court held is Mack and Doe's heirs appear to have introduced Dr. Raymond's testimony and his, quote, every exposure, close quote, theory of asbestos causation to reject the substantial factor test as a whole. Dr. Raymond did not speak to the severity of Mack and Doe's own asbestos exposure. You know, the basic assertion that such exposure was due to him above background asbestos dust is false. Well, I thought that in Mack and Doe's, the evidence of Mack and Doe was, quote, often present when maintenance was performed. But that wasn't the evidence here, right? Could you explain why the evidence here of Mr. Hill's exposure was analogous to Mr. Mack and Doe's exposure? The exposure's analogy is more important than Dr. Rayburn's. His testimony is the same, and it's been explicitly rejected because the only measurement that Dr. Rayburn made was asbestos exposure above background or image. That's it, period. There's no dose. There's not 10 fibers per cc or 5 million particles per cubic foot over an 8-hour time period. There's nothing other than above background or image. In that specific testimony, whether it's each fiber, any fiber, every fiber, or all fibers being a substantial factor, it has been explicitly rejected by the Ninth Circuit because it undermines and defeats the substantial factor test. There is no basis in Dr. Rayburn's declaration to find a substantial factor because his only measurement is above background or image. Are you saying that the district court should have discredited Dr. Rayburn's testimony? And without his testimony, there's no evidence that the exposure that Mr. Hill experienced on those two ships was a substantial factor, is that your position? My position is that Judge Pegrino correctly interpreted Dr. Rayburn's declaration, pursued his gatekeeping function for Revenants Code 702, and found that it was unreliable, and therefore insufficient to establish substantial factor causation. In fact, the... In his opinion, did he expressly discredit Dr. Rayburn's testimony? I don't recall that. He did not use the words expressly discredit. What did you say? Therefore, even when construing the evidence, the light was favorable to the plaintiff. No reasonable jury could conclude from the evidence that plaintiff was exposed to asbestos from original insulation manufactured or supplied by the defendant such that it was a substantial factor. He doesn't expressly address Mr. Rayburn's testimony. Is that correct? He doesn't use Dr. Rayburn's name in this particular sentence, but the only evidence for substantial factor, without which it's necessary to prove causation, is Dr. Rayburn's testimony. Well, I thought what you're saying is that Judge Pegrino pointed out there's his testimony, but he didn't mention the plaintiff's testimony and his deposition. The plaintiff's testimony... He will agree with you. At times, the dust was like a fog. He said that with regard to all ships at all points in time, he did not have any testimony whatsoever. You can't discredit his testimony. That's unrejectable. No, I'm... The view that my sentence was, with regard to Foster Wielder, it's never identified a ship that he believes... He titled all reasonable differences. That's unrejectable. Yes. He hit the nail on the head. Reasonable, which means reliable, which means it's the gatekeeper's function to keep out unreliable testimony. And what we're talking about again, as someone who replies to court, is... His testimony is entitled to... Sorry, Jeffrey. Judge, would you draw reasonable differences from the witness' testimony? Mr. Plaintiff, there was a witness, but his deposition, which was supported, which was clearly supported, in opposition to the rest of your sentence. Absolutely. His testimony in and of itself alone goes nowhere in this case because he could not identify a ship that he worked on that did not have Foster Wielder. Was this... I thought there was no dispute that the original boiler on the Bradley was a Foster Wielder boiler. There is no evidence. It's the contrary. The question becomes whether or not the evidence is... Just with the... Whether the evidence that the plaintiff offered in the form of expert testimony is reliable. And in this case, Judge O'Brieno found that it was not. FHRA rulings on the admissibility of expert testimony cannot be reversed to absent a clear abuse of expression. Zero. I'm saying that it wasn't. It wasn't because he had no personal knowledge seems like a pretty clear error because that's not a basis for discounting an expert's testimony to Supreme Court. It's a towering... I want to be clear in my response. Judge O'Brieno did not say that Mr. I. had no admissible testimony solely because he had no firsthand or personal knowledge. Judge O'Brieno simply pointed out that Mr. I. had no personal knowledge with regard to 1, the ships, 2, the boilers, and 3, the installation. So you have to look at the foundation of his opinion. If it's not personal knowledge, what is it? But the only knowledge that he has is looking at James fighting ships, trying to figure out a case up to his commission, and then taking a guess as to what happened. We don't know whether or not the original boilers remained in the ships between the time they were commissioned and the secret was not... Did Foster Wheeler present evidence on his own judgment to dispute those facts to create a genuine issue material fact as to whether it was a Foster Wheeler boiler on the ground? No. It wasn't Foster Wheeler's job to do that. What's amazing... Well, it's a summary judgment, it is, right? They presented evidence in the form of expert testimony that it was a Foster Wheeler boiler on the Bradley that was commissioned in 1965. So they presented evidence whether strong or weak. So at that point, it is the defendant's responsibility to create a genuine issue material fact. One of the issues is what happened between the time the ship was commissioned and the time it ended up at Hutter's Point, it was shipped here. And nobody knows. There's no evidence of that. That's one of the things that Jennifer Braino is pointing out. You mentioned that Mr. I has no personal knowledge. Nobody had personal knowledge. There's no ship records. It defies logic to think that this brand-new ship would have had the original Foster Wheeler boiler ripped out of it between 1964 and 1965, which is what the expert basically said. More likely than not, it was still the original. And he had no foundation to say that. All right. Go ahead. Thank you, sir. Briefing. McIndoe, I'm an expert on McIndoe because actually in the McIndoe case, two things happened. One is the court actually found there was evidence to go to the jury, and the jury could reasonably determine or decide that Mr. McIndoe was exposed to an original asbestos-eating installation that had nothing to do with the constitutional factor. That's what I want to ask you about. Was an alternative basis for the district judge's ruling that the medical expert substantial factor was not reliable? No. Judge Robredo didn't go there at all. In fact, like I said before, it really wasn't even an issue. In his conclusion, in his analysis, in Robredo's opinion, it says product identification slash causation. There was no different ground than otherwise it would have been in the McIndoe opinion. First, is there product identification? Second, okay, there is, but is that a substantial factor? That didn't happen here because it wasn't part of the suburban judge's motion. So if I understand it, as the counsel said, that there wasn't a genuine, that you had failed to create a genuine issue material to act on whether the amount of exposure he had could have caused his as a lenient homeowner, how do you respond to that? Well, we did, and if you go back to McIndoe, and I think that Judge Cuddy picked up on it, in McIndoe, the only evidence in issue, in footnote 7 to the McIndoe opinion, the court might disagree with it, but this is what the court said. To the extent Dr. Raven attempted to assert that the encounters described by Titch and Saffington are high-level exposures that occurred for a prolonged period of time, he had no basis on which to do so within the next footnote. As the Sixth Circuit acknowledged, and I'm talking about Lindstrom, I'd like to talk about Starr Carson, as the Sixth Circuit acknowledged the rejection of this argument still allows a plaintiff to satisfy causation through expert testimony that the plaintiff's actual exposure to certain materials substantially contributed to the development of his injuries. The difference here is, as you pointed out, Judge Cuddy, Saff and Saffington and Titch were co-workers. They were the only witnesses, because Mr. McIndoe, he never, he passed away. There was no deposition testimony, and there was no declaration. Here, he may have said things like, he may have been there 30, he often was in the presence of these, of these species. He may have been there 20 or 30 times. That was from, but here we have Mr. Yeltsin himself saying, look it, I was on these ships for two or three months here, for six hours a day here. I was on the castration for three, six months, working 40 hours a week. I was exposed to peptides. So it still fits entirely within McIndoe. Thank you. Thank you very much. Counsel, we appreciate your arguments. It's important to get those matters submitted at the end of our session for today.
judges: Paez, Ikuta, Bolton